UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| EGAN MCBRIDE<br> Plaintiff<br><br>v.<br><br>DENTON COUNTY PUBLIC HEALTH,<br>DENTON COUNTY, TEXAS,<br>MATT RICHARDSON, IN HIS OFFICIAL<br>CAPACITY AS DIRECTOR OF PUBLIC<br>HEALTH FOR DENTON COUNTY PUBLIC<br>HEALTH, JOHN KISSINGER, IN HIS<br>OFFICIAL CAPACITY AS CORRECTIONAL<br>HEALTH ADMINISTRATOR FOR DENTON<br>COUNTY PUBLIC HEALTH,<br> Defendants | § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br><br>_____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

  PLAINTIFF, EGAN ZACHARY MCBRIDE, files this, Plaintiff's Original Complaint against Denton County, Texas; Denton County Public Health, Denton County, Texas; Matt Richardson, in his official capacity as Director of Denton County Public Health; and John Kissinger, in his official capacity as Correctional Health Administrator for Denton County Public Health (collectively, "Defendants"), for violation of Plaintiff's rights under Title II of the Americans with Disabilities Act; Section 504 of the Rehabilitation Act of 1973; Section 1557 of the Patient Protection and Affordable Care Act; and under 42 U.S.C. Section 1983.

**PARTIES**

1. Plaintiff is a Texas resident, living in Denton, Texas but presently housed within the Denton County Jail located in Denton County, Texas.

2. Defendant, Denton County, Texas is a governmental entity that can be served under Rule 4(j)(2) of the Federal Rules of Civil Procedure by serving County Judge Andy Eads at 1 Courthouse Drive, Suite 3100, Denton, Texas 76208.

3. Defendant, Denton County Public Health, Texas ("Public Health") is a governmental entity that be served under Rule 4(j)(2) of the Federal Rules of Civil Procedure by serving County Judge Andy Eads at 1 Courthouse Drive, Suite 3100, Denton, Texas 76208. Public Health

is responsible for healthcare at Denton County Jail. Public Health is a recipient of federal funding, and is an entity pursuant to the ADA, Section 504, and Section 1557 of the ACA.

4. Defendant, Matt Richardson, is a Texas resident who may be served with process at Denton County Public Health, 538 South Loop 288, Denton, Texas 76205. Mr. Richardson is the Director of Denton County Public Health and oversees all operations of Public Health. He is sued in his official capacity.

5. Defendant, John Kissinger, is a Texas resident who may be served with process at Denton County Public Health, 538 South Loop 288, Denton, Texas 76205. Mr. Kissinger is the Correctional Health Administrator for Public Health, and oversees healthcare at Denton County Jail. He is sued in his official capacity.

**JURISDICTION & VENUE**

6. This Court has jurisdiction pursuant to 28 U.S.C. § § 1331 and 1343 as this action seeks to vindicate rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983.

7. This action is also brought pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § § 12131-12134, Section 504 the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

8. Venue is proper in the Eastern District of Texas, Sherman Division, under 28 U.S.C. § 1391 because Defendants reside in, or are located within, the judicial district of this Court.

9. Plaintiff has performed all conditions precedent to bringing this lawsuit and all claims asserted herein as the law requires.

**FACTS**

10. Plaintiff is a twenty-seven-year-old male who became addicted to heroin and fentanyl around 2016.

11. In 2017 and 2018, at the height of Plaintiff's addiction, Plaintiff was homeless and lived in a wooded area within the city of Denton. As a result of Plaintiff's addiction, Plaintiff was unemployed and was unable to feed himself or care for his basic hygiene. Plaintiff's immune system became weakened, and he was frequently ill. Plaintiff became very weak, and was unable to perform manual work due to his physically diminished state and his unbreaking focus on securing drugs to get high. Instead, Plaintiff spent his days getting high on heroin and fentanyl and searching for scrap metal to sell to support his addiction.

    Thoughts about getting high, and how to acquire drugs, were relentless and Plaintiff could focus on nothing else. At night, Plaintiff suffered from sleep disturbances.

12. In 2020, following a series of arrests for drug charges, Plaintiff sought treatment for his addiction at Applegate Recovery in Lewisville, Texas. There, he was diagnosed for the first time with Opioid Use Disorder - Diagnostic and Statistical Manual of Mental Disorders IV (F11.20.) After examination by a nurse that included evaluation of his opioid withdrawal symptoms and his vitals, and following examination by a physician, Plaintiff was prescribed buprenorphine (commonly referred to by its brand name "Suboxone") as medication for his Opioid Use Disorder and individual counseling.

13. Buprenorphine, along with methadone and naltrexone, are the only three Food and Drug Administration-approved medications for treatment of Opioid Use Disorder. These medications represent the accepted standard of care for Opioid Use Disorder. Additionally, there is an overwhelming scientific consensus that these three medications are the only acceptable medical care for Opioid Use Disorder. Such consensus has existed for at least over a decade now. See, e.g. A. Leshner, et al. "Medication-Based Treatment to Address Opioid Use Disorder," <u>Journal of American Medicine</u> 2019 321(21): 2071-72; U.S. Dept. of Health & SAMHSA <u>Evidence-Based Resources Guide Series: Use of Medication-Assisted Treatment for Opioid Use Disorder in Criminal Justice Settings</u>, HHS Pub. No. PEP19-MATUSECJS Rockville, MD, 2019; World Health Organization "Guidelines for psychosocially assisted pharmacological treatment of opioid dependence," Geneva, Switzerland: 2009.

14. Plaintiff initially responded well to this treatment, but soon began failing to appear for his counseling and for his medication. Plaintiff relapsed around 2021 and began using heroin and fentanyl daily again.

15. During the period from 2021 to early 2023, Plaintiff participated in Intensive Outpatient Treatment, was placed on the Substance Abuse Caseload for his community supervision in Denton County Cause Nos. F19-948-158 and F19-949-158, and attended meetings at Narcotics Anonymous.

16. None of the above interventions from 2021 to early 2023 proved to be successful at treating Plaintiff's Opioid Use Disorder, and Plaintiff continued to test positive on urinalysis testing through probation for fentanyl.

17. On May 4, 2023, Plaintiff sought treatment for his addiction at Texas Treatment Services in Denton. Plaintiff was diagnosed at that time with Opioid Use Disorder – Severe; was observed to be exhibiting symptoms of opioid withdrawal; and again met the criteria for Opioid Use Disorder under the Diagnostic and Statistical Manual of Mental Disorders IV (F11.20.)

18. On May 4, 2023, Plaintiff was prescribed methadone as medication for Opioid Use Disorder for treatment of his Opioid Use Disorder. Plaintiff continued to receive methadone as medication for his Opioid Use Disorder for the following three months.

19. Methadone does not cause Plaintiff, or any person with Opioid Use Disorder, to feel "high" or become intoxicated when properly prescribed under the care of a physician. Instead, it causes Plaintiff to feel "normal" and eliminates Plaintiff's intense and unrelenting cravings for opioids, and prevents withdrawal symptoms from occurring. While being treated for his opioid use disorder with methadone, Plaintiff could work and function normally. Without medication for his opioid use disorder, Plaintiff cannot and did not function normally.

20. On July 21, 2023, Plaintiff was ordered to report to Denton County Jail by 5:00PM on Friday, July 21, 2023, and remain there until 5:00PM on Sunday, July 23, 2023, as a condition of his continued community supervision in Denton County Cause Nos. F19-948-158 and F19-949-158.

21. Plaintiff asked his community supervision officer, Mary Miclat, if he would continue to be able to receive his medication for opioid use disorder while incarcerated in Denton County Jail. Ms. Miclat told Plaintiff that Denton County Jail does not provide any medication for Opioid Use Disorder.

22. It is well-known by those at probation, in the courthouse, in the treatment community, and in the larger community that Denton County Jail does not provide any medication for Opioid Use Disorder to inmates, and that Defendants' policy is to require inmates with Opioid Use Disorder who are on medications to "dry out" and suffer withdrawal as a further form of punishment.

23. Plaintiff then asked Texas Treatment Services whether Denton County Jail provided continuation of medications for Opioid Use Disorder, and was informed that Defendants did not, but Cooke, Wise, Collin, Dallas, and Tarrant counties did.

24. Plaintiff became concerned and asked for Texas Treatment Services to send his records detailing his diagnosis with Opioid Use Disorder and treatment with medication for Opioid Use Disorder to Defendants including dosage and contact information for his physician and providers.

25. This process of providing proof of current medication including dosage and contact information for the prescribing physician is the procedure for continuation of medications at Denton County Jail under Defendants.

26. Defendants, jointly and severally, are the individuals and entities responsible for healthcare at Denton County Jail.

27. Indeed, Defendants' policy regarding the eligibility to receive, administration of, an/or protocol or practice concerning the receipt of medication for Opioid Use Disorder for inmates with Opioid Use Disorder at Denton County Jail is to ban such medications without exception.

28. However, Defendants routinely provide healthcare to those inmates with disabilities other than Opioid Use Disorder, including but not limited to: providing wheelchairs and crutches to inmates with physical disabilities; providing special meals to those inmates with diabetes or other dietary restrictions; providing eyeglasses to the visually impaired; providing narcotic medications to patients for pain and medications for mental health disorders and the like.

29. Plaintiff's medical records from Texas Treatment Services were provided to John Kissinger, Correctional Health Administrator for Denton County Jail, on July 20, 2023, prior to Plaintiff's surrender to Denton County Jail. These records evidenced Plaintiff's current diagnosis with Opioid Use Disorder and his current medication for opioid use disorder from Texas Treatment Services.

30. Defendant John Kissinger confirmed receipt of the records on July 20, 2023.

31. Defendant Kissinger is not a physician and by his own words has no authority to substitute his judgement about a medication or method of treatment for that of an inmate's physician, irrespective of what that medication or method of treatment is.

32. Plaintiff's surrender date was pushed back at Defendant John Kissinger's request to 5:00PM on July 28, 2023 with release to occur on 5:00PM on Sunday, July.

33. On the morning of July 29, 2023, Plaintiff went to Texas Treatment Services, as he had daily since May of 2023, and received his medication for Opioid Use Disorder.

34. That evening, Plaintiff surrendered himself to Denton County Jail, relying on Defendants to continue his medication for Opioid Use Disorder to prevent excruciating and potentially life-threatening withdrawal symptoms, but fearing that they would not based on Defendants' standing policy which prohibited such medications and Defendants' reputation for the same within the community.

35. At no point during his booking into Denton County Jail was Plaintiff asked any medical questions whatsoever, nor was any medical information such as Plaintiff's temperature or blood pressure taken. Nor was Plaintiff evaluated for standard symptoms of withdrawal.

36. Plaintiff informed Defendants that Plaintiff was taking methadone as medication for Opioid Use Disorder and that Plaintiff's records had previously been provided to, and received by, Defendants. Plaintiff's requests for continuation of his medication were met with indifference and his pleas were ignored once incarcerated.

37. Plaintiff was told by Defendants and jail staff that the Defendants did not provide such medications to inmates and that inmates had to suffer withdrawal and go "cold turkey," presumably as some form of further punishment.

38. In the early morning hours of July 30, 2023, Plaintiff began experiencing withdrawal symptoms such as runny nose, bone aches, intense anxiety, and nausea. Plaintiff recognized these as early symptoms of withdrawal, which Plaintiff knew would intensify greatly over the next several hours and become debilitating.

39. Plaintiff informed Defendants that he was experiencing withdrawal symptoms and needed his medication for Opioid Use Disorder. Plaintiff was ignored, and was told again that Defendants do not provide medication for Opioid Use Disorder or provide any treatment to inmates with Opioid Use Disorder.

40. At no point did Defendants check on Plaintiff, inquire about Plaintiff's symptoms, or provide Plaintiff with any medication to treat his Opioid Use Disorder.

41. Plaintiff received no healthcare whatsoever at Denton County Jail.

42. Plaintiff was released from Denton County Jail on July 30, 2023, broken and suffering from increasingly severe withdrawal symptoms.

43. Plaintiff used fentanyl immediately following his release to avoid withdrawal symptoms. This is a predictable outcome of removing medication for Opioid Use Disorder for someone who has previously been treated with such medication prior to incarceration.
44. In April of 2024, Plaintiff entered substance use treatment for Opioid Use Disorder at Christian Farms Treehouse in Killeen, Texas, as a term of his supervision in Denton County Cause Nos. F19-948-158 and F19-949-158.
45. Plaintiff was again prescribed buprenorphine as medication for his Opioid Use Disorder and for treatment of his Opioid Use Disorder and began medication in conjunction with individual and group counseling.
46. From April of 2024 to November 9, 2024, Plaintiff regularly filled his prescriptions for buprenorphine and took buprenorphine daily for treatment of his Opioid Use Disorder.
47. Plaintiff obtained a full-time job at Chuy's restaurant in August of 2024, where Plaintiff is employed as a server.
48. Plaintiff enrolled in Intensive Outpatient at Solutions of North Texas for substance use and is, at present, approximately four weeks from graduating the program.
49. On November 8, 2024, Plaintiff was jailed pursuant to a warrant on his supervision cases in Denton County Cause Nos. F19-948-158 and F19-949-158.
50. Plaintiff had last taken his buprenorphine the morning of November 8, 2024.
51. At booking, Plaintiff informed Defendants that he was prescribed and currently taking buprenorphine as medication for his Opioid Use Disorder.
52. At booking, Plaintiff was inexplicably forced to undergo urinalysis testing for illegal drugs.
53. On November 9, 2024, Plaintiff signed releases on his jail issued tablet for his records showing his most recent (and third) diagnosis with Opioid Use Disorder and prescription for buprenorphine for treatment to be released to Defendants.
54. Since November 8, 2024, Plaintiff has gone to medical daily to request Defendants provide him with his prescribed medication for Opioid Use Disorder.
55. Since November 8, 2024, Defendants have refused to provide, or allow Plaintiff to continue taking, buprenorphine or any medication for Opioid Use Disorder.
56. Since November 8, 2024, Defendants have not provided Plaintiff with any medication for Opioid Use Disorder or accommodated his reasonable request to allow his mother, Dana, to bring his current prescription for buprenorphine to the jail to be administered to Plaintiff.

57. Plaintiff is currently experiencing increasingly severe symptoms of withdrawal including insomnia, joint pain, nausea, and loss of appetite.
58. Inmates in Plaintiff's pod have taken notice of his deteriorating health and of the above symptoms.
59. Defendants have not provided any on-label treatment for withdrawal symptoms, and are allowing Plaintiff to needlessly suffer.
60. Providing Plaintiff his doctor-prescribed, documented, and long standing prescription for buprenorphine for treatment of his Opioid Use Disorder would end his suffering.
61. Further, just as they had in September of 2023, Defendants have directly caused Plaintiff to stand at an exponentially increased risk of relapse, increased risk of fatal overdose when released, and have forced Plaintiff back to the starting line in his recovery effort.
62. Plaintiff now seeks relief under the United States Constitution, the Americans with Disabilities Act (hereinafter, the "ADA"); Section 504 of the Rehabilitation Act; Section 1557 of the Patient Protection and Affordable Care Act (hereinafter, the "ACA"); and under 42 U.S.C. Section 1983 to end Defendant's ban on medications for Opioid Use Disorder when individuals arrive at Denton County Jail.

**CAUSES OF ACTION**

63. The previous sections are incorporated as if set forth herein.

**Count I – Unlawful Discrimination Against a Qualified Individual in Violation of the Americans with Disabilities Act (Against All Defendants)**

64. Defendant Public Health is a public entity that receives federal funding and is thus subject to the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act.
65. The conduct of Defendants with regard to the arbitrary and capricious prohibition on Plaintiff's continued care and treatment for Opioid Use Disorder, specifically, by preventing continuation of daily dosage of Plaintiff's prescribed medication for Opioid Use Disorder while Plaintiff is incarcerated, violates Title II of the Americans with Disabilities Act.
66. "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or subjected to discrimination by any such entity." 42 U.S.C. § 12132.

67. Substance use, including Opioid Use Disorder, is a disability covered by and protected under Title II of the Americans with Disabilities Act, Section 504 the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

68. Irrespective of an incarcerated person's illicit drug use, medication for Opioid Use Disorder is a health service and a service provided in connection with drug rehabilitation that is protected under the ADA. 42 U.S.C. § 12210(c).

69. Defendants' practices regarding medication for Opioid Use Disorder deny Plaintiff the benefit of medical services that are available to other incarcerated individuals solely on the basis of Plaintiff's specific disability, Opioid Use Disorder.

70. Defendants' denial of continuity of medication for Opioid Use Disorder, specifically buprenorphine, for Plaintiff is discriminatory conduct in direct contravention of the Americans with Disabilities Act, 42 U.S.C. § 12132.

**Count II – Unlawful Discrimination in Violation of Section 504 of the Federal Rehabilitation Act (Against All Defendants)**

71. The preceding paragraphs are incorporated as if set forth herein.

72. Defendants' denial of continuity of medication for Opioid Use Disorder, specifically buprenorphine, for Plaintiff is discriminatory conduct that violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

**Count III – Unlawful Discrimination In Violation of Section 1557 of the Patient Protection and Affordable Care Act (Against All Defendants)**

73. The preceding paragraphs are incorporated as if set forth herein.

74. Section 1557 of the ACA contains the prohibition against discriminatory conduct from Section 504 of the Federal Rehabilitation Act, as applied to "any health program or activity, any part of which is receiving Federal financial assistance…" 42 U.S.C. § 181116.

75. Denton Public Health receives and has received federal assistance, including assistance from the United States Department of Health and Human Services.

76. Under the ACA, coverage that falls within ten general essential health benefits is required. 42 U.S.C. § 18022(a)-(b).

77. Essential health benefits include "mental health and substance use disorder services," "rehabilitative services," and "prescription drugs." 42 U.S.C. § 18022(b)(1)(E)-(G).

78. Defendants have failed to make reasonable modifications to policies, practices, and procedures that would permit, as general rule, continuity of access to the three F.D.A.-approved medications for Opioid Use Disorder, including buprenorphine, for those in the custody of Denton County Jail. Such modifications are necessary to avoid discrimination on the basis of Opioid Use Disorder. 28 C.F.R. § 35.130(b)(7)(i)("A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.")

79. In violation of both 504 of the Rehabilitation Act and the ACA, Defendants have employed an arbitrary and capricious system of disallowing continuity of medication for Opioid Use Disorder, specifically buprenorphine, to individuals who need it, solely on the basis of their diagnosis.

80. Defendants' policy on medication for Opioid Use Disorder adopts the diagnosis itself, Opioid Use Disorder, as a prohibition for the continuation of the only available and effective medical care for the disability: medications for Opioid Use Disorder. This directly violates 28 C.F.R. § 35.130(b)(3)(i).

81. Because Defendants have discriminated against Plaintiff on grounds expressly prohibited under Rehabilitation Act Section 504 through their actions, Defendants also violate Section 1557 of the ACA.

82. In failing to ensure Plaintiff has continued access to medications for Opioid Use Disorder, specifically buprenorphine, while incarcerated at Denton County Jail, Defendants have engaged in discriminatory conduct in violation of Section 1557 of the ACA. 42 U.S.C. § 18116.

**County IV – 42 U.S.C. Section 1983 - Deliberate Indifference to Serious Medical Need of Plaintiff in Violation of the Eighth & Fourteenth Amendments**

The preceding paragraphs are incorporated as if set forth herein.

83. The Eighth and Fourteenth Amendments of the United States Constitution prohibits cruel and unusual punishment, at a minimum. The Fourteenth Amendment prevents pretrial detainees from being punished in any manner whatsoever and uses "cruel and unusual punishment" as the absolute minimum standard.

84. Defendants are acutely aware Opioid Use Disorder is a serious, life-threatening, medical condition in need of treatment.
85. Defendants are likewise well aware that medications for Opioid Use Disorder, including buprenorphine, is the medical standard of care for, and only available treatment for, Opioid Use Disorder.
86. Defendants presumably agree that medications for Opioid Use Disorder, including buprenorphine, is the medical standard of care for Opioid Use Disorder.
87. Defendants presumably agree that such medications are completely safe, can be easily provided to inmates with Opioid Use Disorder at Denton County Jail, and are unparalleled in their efficacy at treating Opioid Use Disorder.
88. Defendants are further aware that the refusal to provide this medical standard of care to Plaintiff and other inmates subjects such persons to serious harm, including heightened risk of overdose and death.
89. Defendants are aware that "cold turkey" withdrawal from opioids, including medications for Opioid Use Disorder like buprenorphine, by persons with Opioid Use Disorder cause excruciating and torturous physical and psychological withdrawal.
90. Defendants are likewise aware that refusing to provide medication for Opioid Use Disorder to inmates with Opioid Use Disorder likely violates Title II of the ADA, Section 504 of the RA, and Section 1557 of the ACA, as Defendants have been cautioned of this no less than three separate times since July of 2023.
91. Nevertheless, Defendants choose to disregard these federal laws, and deliberately chose to force Plaintiff to undergo excruciating and torturous physical and psychological withdrawal from his medication for Opioid Use Disorder despite knowing Plaintiff was a qualified person with a disability and his continuation of care and treatment with medications for Opioid Use Disorder was protected under Title II of the Americans with Disabilities Act, Section 504 the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.
92. Defendants' cruel and inhumane treatment of Plaintiff in this manner is a direct affront to society's evolving standards of decency. The forced withdrawal of Plaintiff from his physician-prescribed medication for Opioid Use Disorder, specifically buprenorphine,

inflicted wanton, and willful suffering on Plaintiff in violation of the Eighth and Fourteenth Amendments.

93. Defendants' conduct establishes a deliberate indifference to the serious medical need of Plaintiff in violation of the Eighth and Fourteenth Amendments under 42 U.S.C. Section 1983.

**Request for Injunctive Relief**

The preceding paragraphs are incorporated as if set forth herein.

94. Plaintiff alleges that he, and all other inmates with Opioid Use Disorder who have been prescribed medication for Opioid Use Disorder housed in Denton County Jail, are denied such medication pursuant to Defendant's prohibition on methadone, buprenorphine, and naltrexone—the only three medications approved for treatment of Opioid Use Disorder—and are made to suffer painful and potentially life-threatening withdrawal.

95. As a result, Plaintiff and other inmates with Opioid Use Disorder under the care of Defendants at Denton County Jail have been forced to suffer irreparable harm, insofar as they face an increased risk of overdose, fatal overdose, and drastically reduced chance to reengage with treatment including treatment with medication for Opioid Use Disorder.

96. Such harm is entirely avoidable and is directly prohibited from being inflicted under federal law.

97. Defendants deny treatment with medication for Opioid Use Disorder to inmates with Opioid Use Disorder on an ongoing, and often daily, basis. In addition to current inmates, Defendants have denied such care to previous inmates and will deny such care to future inmates.

98. As such, compensation for ongoing conduct and future conduct is presently incapable of being qualified or measured. Additionally, increased risk of fatal overdose; the decreased chance of returning to substance use treatment; and being required to begin medication for Opioid Use Disorder over again are presently preventable and difficult to quantify at this point.

99. Plaintiff seeks a permanent injunction against all Defendants individually or jointly and severally to prevent the ongoing denial of medication for Opioid Use Disorder to inmates with Opioid Use Disorder who have, prior to their incarceration in Denton County Jail, been treated with methadone, buprenorphine, or naltrexone.

**DAMAGES**

100. Plaintiff has been harmed by the conduct set forth above and seeks actual, compensatory, consequential, special, punitive, and exemplary damages, including those described specifically below. Plaintiff seeks the reasonable recovery of his reasonable and necessary attorneys' fees.

**CONDITIONS PRECEDENT**

101. To the extent necessary, Plaintiff has performed all conditions precedent to bringing this lawsuit and all claims asserted herein as the law requires.

**JURY DEMAND**

102. Plaintiff hereby requests a trial by jury.

**PRAYER**

Plaintiff requests that Defendants, Denton County, Texas; Denton County Public Health; Matt Richardson in his official capacity as Director of Denton County Public Health; and John Kissinger in his official capacity as Correctional Health Administrator for Denton County Public Health, be cited to appear and answer herein, and that, upon final trial of this cause, Plaintiff have and recover:

a. Actual damages;
b. Punitive damages;
c. Exemplary damages;
d. Consequential damages;
e. Compensatory damages;
f. Special damages;
g. Interest before and after the judgment as provided by law;
h. Reasonable and necessary attorneys' fees;
i. Lost wages, if any;
j. A temporary injunction pending the resolution of this matter by jury trial preventing Defendants, individually or jointly and severally, from the type of conduct set forth above regarding Plaintiff with any current and future inmate in Denton County Jail;
k. Costs of the court; and
l. All other and further relief to which Plaintiff is justly entitled.

RESPECTFULLY SUBMITTED,

/s/ GEORGE ROLAND
**GEORGE ROLAND**
SBN: 24084476

/s/ SARAH ROLAND
**SARAH ROLAND**
SBN: 24049077

903 N. ELM STREET
DENTON, TX 76201
P: (940) 323-9308, (940) 323-9305
E: georgecroland@gmail.com
E: sarah@sarahroland.com
F: (940) 312-6830
ATTORNEYS FOR PLAINTIFF

/s/ CHRIS RAESZ
**CHRIS RAESZ**
SBN: 16460150
306 N. CARROLL BLVD
DENTON, TX 76201
P: (940) 380-9505
E: court@chrisraeszpc.com
F: (940) 382-2065
ATTORNEY FOR PLAINTIFF